IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ZACORIUS GLANTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACT. NO. 1:19-cv-327-ECM |
| | ) | (WO) |
| WAYNE FARMS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION and ORDER

Now pending before the Court are two motions to dismiss filed by Defendant Wayne Farms, LLC ("Wayne Farms"). (Doc. 10 & 25).

On May 7, 2019, the Plaintiff Zacorius Glanton ("Glanton") filed a complaint against Wayne Farms. Wayne Farms filed a motion to dismiss and Glanton sought to amend the complaint in response. One issue identified by Wayne Farms in its first motion to dismiss was a lack of factual allegations to support a finding of employer liability for the federal claims. The Court allowed Glanton to amend his complaint. (Doc. 23). Glanton filed an amended complaint bringing a hostile work environment claim pursuant to Title VII of the Civil Rights Act of 1964 (count one), a claim of constructive discharge pursuant to Title VII (count two), a state-law claim of outrageous conduct (count three), a state-law claim of invasion of privacy (count four), a state-law assault and battery claim (count five), and a state-law negligent supervision claim (count six). (Doc. 24).

Because the first motion to dismiss (doc. 10) was directed to the original complaint, and an amended complaint has been filed, the first motion to dismiss is due to be DENIED as moot.

Upon consideration of the amended complaint and the briefs of the parties, and for the reasons that follow, the motion to dismiss the amended complaint (doc. 25) is due to be DENIED.

## I.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U. S. at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U. S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-

me accusation." *Id.* at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

## II. DISCUSSION

The pending motion to dismiss the amended complaint presents issues not only as to the whether the amended complaint states a claim for relief, but also whether the Court may consider documents outside of the amended complaint in making that determination. Therefore, rather than merely setting out the facts as alleged in the amended complaint, the Court will first address the issues of the factual allegations to be considered and then will address the substance of the motion to dismiss as applied to the facts to be considered.

### A. Factual Allegations Considered by the Court

Glanton alleges in his amended complaint that he was an employee of Wayne Farms from March 1 to July 18, 2018. Glanton's employment was allegedly constructively terminated on July 18, 2018. Glanton identifies another employee of Wayne Farms, Allen Stephenson ("Stephenson"), as a person who sexually harassed him.

In the amended complaint, Glanton alleges that on a day in March 2018, Glanton complained about unwanted touching by Stephenson to his supervisor, Angela Molden ("Molden") who at first laughed off the behavior and took no action in response to the complaint. (Doc. 24 at ¶24). Thirty to forty-five minutes later, after Glanton complained to Molden a second time, Molden agreed to move Glanton to another line. Glanton alleges that Molden did not report the behavior to Human Resources and that reporting the behavior was required by Wayne Farms' policy. (Doc. 24 at ¶38).

Glanton alleges that Stephenson did not stop his inappropriate behavior after Glanton was placed on a different line at the plant. According to Glanton's amended complaint, "[d]ays after Plaintiff's first two complaints," (doc. 24 at ¶43), Stephenson again touched him inappropriately and Glanton went to "Clarence (LNU), Perry (LNU), and Molden"[1] where he again complained. (Doc. 24 at ¶50). Glanton alleges that he was told he was being homophobic, but that the managers would move him away from Stephenson. The managers did not reprimand Stephenson. (Doc. 24 at ¶56). Although he was moved, Glanton alleges that Stephenson continued to touch him on a weekly basis as he was working. (Doc. 24 at ¶61).

Wayne Farms has asked the Court to accept the facts stated in Glanton's EEOC charge where they conflict with his amended complaint. The EEOC charge in this case is consistent with the facts set forth above, except that rather than Glanton experiencing conduct "days after" his two complaints to Molden, the EEOC charge states that that "later that day" Stevenson again inappropriately touched Glanton while he was standing at the time clock; and Clarence, Perry, and Angela subsequently moved him to a different line. (Doc. 26-3).

Although courts generally only consider the language of a complaint in deciding a motion to dismiss, a district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged. *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379

---

[1] The Court will refer to Clarence (LNU) as "Clarence" and Perry (LNU) as "Perry."

(11th Cir. 2010). Courts regularly consider EEOC charges without converting a motion to dismiss into a motion for summary judgment. *See, e.g*., *Zachery v. Coosa Cty. Bd. of Educ.,* 2019 WL 4054965, at *4 (M.D. Ala. 2019). In this case, the EEOC charge is referenced in the amended complaint and attached to the original complaint. (Doc. 1-1 & 24 at ¶3). The Court will, therefore, consider the facts within the EEOC charge.

In deciding whether to accept as accurate the substance of an exhibit attached to a complaint, courts are to follow the same general pleading standards that apply under Federal Rule of Civil Procedure 8, so that when exhibits attached to a complaint contradict the general and conclusory allegations of the pleading, the exhibits govern, and vice versa. *See Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 514-15 (11th Cir. 2019). In this case, a conflict between the amended complaint and the EEOC charge arises because the EEOC charge says that Glanton complained to Molden and then "later that day" complained to other managers after additional conduct, whereas the amended complaint alleges a complaint to other managers "days after" the complaint to Molden.

Glanton argues in his brief that a plaintiff may amend his complaint to clarify or amplify facts in an EEOC charge. Glanton also has asked the Court to consider a transmittal letter for the Defendant's EEO position statement to show that Wayne Farms acknowledged that it may need to revise its position, just as Glanton has done. Glanton further argues that the timing of the three complaints, two only to Molden and one to other members of management, is not dispositive because no appropriate action was taken in response to any of the complaints.

The authority upon which Glanton relies allowing for amplification of the EEOC charge does not speak directly to this situation. *See Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989) (stating that "claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate."). Glanton seeks to change the allegations of his complaints of harassment from three times within a single day to three times during two different days. Following the Eleventh Circuit's guidance in *Gill*, the Court will consider the specific statement of the sworn EEOC charge that the complaint was the same day, not the general reference to an unspecified date "days later."

The next issue presented regarding facts to be considered concerns the reporting requirements within the anti-harassment policy of Wayne Farms. Glanton has alleged that his complaints to Molden, Clarence, and Perry complied with Wayne Farms' reporting policy.

Wayne Farms has asked the Court to consider the text of the anti-harassment policy as written in a document, and not the paraphrasing of that document in Glanton's amended complaint. Wayne Farms attaches excerpts from its anti-discrimination policy to its motion to dismiss and states that the only occasion on which Glanton complied with the policy was when he complained to the Human Resources manager. (Doc. 26 at 18).

As earlier noted, a motion to dismiss is usually decided based on the complaint itself, but an exception may apply when a plaintiff refers to a document in its complaint and the defendant attaches the document to its motion to dismiss. *See Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (stating that because the document

was attached to the motion to dismiss, there was notice that the district court might consider the document and because it is referred to in the complaint, it is central to claim, its consideration comports with the requirements of notice pleading, and neither party challenges its authenticity).

The policy attached to the motion to dismiss meets the criteria for considering it in that Glanton must establish a basis for employer liability as an element of his claim, he had notice of the policy, and does not challenge its authenticity. *Id.*

The Court notes, however, that this is not necessarily a situation in which "the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit." *Zachery*, 2019 WL 4054965, at *4. There is instead a different interpretation of the policy by Glanton and Wayne Farms. Wayne Farms points to a provision of the reporting policy which states, above Glanton's signature, "I understand that I must immediately notify my local Human Resources manager or representative if any incident of discrimination or harassment occurs." (Doc. 26-2 at 2). The policy, however, also states that harassment complaints or incidents of any kind brought to the attention of any manager or supervisor must be reported to the local Human Resources manager. (Doc. 26-2 at 2). The policy further states that managers and supervisors have an obligation to promptly report complaints or incidents to their local Human Resources manager or representative. (Doc. 26-2 at 2). Glanton's allegation that he complied with the policy is based on an argument that the policy is ambiguous as to what is required to report harassment. Therefore, although the Court will not accept a legal conclusion of compliance as alleged in the amended complaint, the Court will consider all of the policy language provided to it.

Regarding the end of his employment, in the amended complaint, Glanton alleges that in June, Stephenson touched Glanton and a confrontation ensued. (Doc. 24 at ¶74). At that point, Glanton alleges that "managers stepped in and took Glanton to Human Resources." (Doc. 24 at ¶75). The Human Resources manager told Glanton that Wayne Farms would investigate. Glanton alleges that the Human Resources manager did nothing to ensure that Stephenson and Glanton were separated during the investigation. (Doc. 24 at ¶79). Glanton alleges that he returned to his line "to start work" but Stephenson was still "trying to get" his attention to engage in sexually inappropriate behavior and because the company had not protected him even though he had made previous complaints, he was forced to leave the floor. (Doc. 24 at ¶¶ 81, 82).

Glanton alleges that he left the work area and did not return to work.

**B. Glanton's Claims**

*1. Hostile Work Environment Claim*

Wayne Farms argues that the hostile environment claim is due to be dismissed for failure to state a claim because Glanton has failed to plead a basis of employer liability. Wayne Farms' argument has two components. First, Wayne Farms has argued that Glanton did not follow its policy of reporting harassment because he complained to a supervisor or manager, not to Human Resources, until the day he left his employment. Second, Wayne Farms argues that even though Glanton did not follow the reporting policy until the day he left his employment, Wayne Farms took adequate remedial steps.

In a case such as this one in which there is federal claim based on an allegation of harassment by a co-worker, "the employer will be held directly liable if it knew or should

have known of the harassing conduct but failed to take prompt remedial action." *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1258 (11th Cir. 2014). In other words, direct liability "exists when the employer knew (actual notice) or should have known (constructive notice) of the harassment and failed to take remedial action." *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir. 2000). The Eleventh Circuit has identified two ways in which corporate employers may obtain actual knowledge of sexual harassment: (1) through the victim's utilization of the employer's established complaint procedures, *see id.* at 889–90 (finding complaint to manager of a single store within a large retail chain to be sufficient where victim followed policy procedures); or (2) when a member of higher management becomes aware of the harassment. *Wilcox v. Corr. Corp. of Am.*, 892 F.3d 1283, 1287 (11th Cir. 2018) (citing *Henson v. City of Dundee*, 682 F.2d 897, 905 (11th Cir. 1982)). [2] The Eleventh Circuit also has held that "when an employer's sexual harassment policy clearly specifies the steps an employee should take to alert the employer of sexual harassment, the employer has, by the policy, 'itself answered the question of when it would be deemed to have notice of the harassment sufficient to obligate it or its agents to take prompt and appropriate remedial measures.'" *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1300 (11th Cir. 2000); *see also Terry v. Laurel Oaks Behavioral Health Ctr., Inc.*, 1 F. Supp. 3d 1250, 1274 (M.D. Ala. 2014) (where an employer has an anti-harassment policy with reasonable complaint procedures, that policy "forecloses resort to constructive notice as a means of establishing the notice required for direct liability.").

---

[2] Glanton does not allege any facts to show that persons to whom he complained, two of whom are identified only by first name, are higher management.

To provide a basis for dismissal in this case, the employer's reporting policy must clearly specify the steps an employee should take to alert the employer of sexual harassment, *Coates v. Sundor Brands, Inc*., 164 F.3d 1361, 1364 (11th Cir. 1999), and the employee must have failed to make "reasonably sufficient use of the channels" provided by the policy. *Id.*

Glanton alleges that he reported Stephenson's harassing conduct to Wayne Farms Managers Clarence, Perry, and Molden. (Doc. 24 at ¶91). Glanton argues that these complaints were in compliance with the reporting policy because Glanton complained to members of management who are required to report complaints to Human Resources under the Wayne Farms policy.

As earlier set out, the reporting policy, signed by Glanton, states that he "must immediately notify [his] local Human Resources manager or representative if any incident of discrimination or harassment occurs." (Doc. 26-2 at 2). As also noted earlier, however, there is language in the same policy which requires reporting by management. The policy states that harassment complaints or incidents of any kind brought to the attention of any manager or supervisor must be reported to the local Human Resources manager. (Doc. 26-2 at 2). The policy also states that managers and supervisors have an obligation to promptly report complaints or incidents to their local Human Resources manager or representative. (Doc. 26-2 at 2).

The Eleventh Circuit has analyzed reporting policies in cases relied on by Wayne Farms in its brief. In *Madray*, the "employer did not have actual notice of sexual harassment because the aggrieved employee brought her complaints 'to individuals not

designated by [the employer] to receive or process sexual harassment complaints.'" 208 F.3d at 1300. In that case, the plaintiff argued that complaining to mid-level managers was reasonable because of another "Open Door Policy" of the employer which encouraged employees to talk to anyone in management about problems and recommended that problems be discussed with department heads. *Id.* at 1297. The court rejected that argument, however, concluding that the plaintiffs also did not follow the procedures of the Open-Door Policy. *Id.* at 1302. Of significance to the analysis in the instant case, however, is that the Eleventh Circuit evaluated the reasonableness of the employee's actions in resorting to the separate Open-Door policy. *Id.*

In *Minix v. Jeld-Wen, Inc.*, 237 F. App'x 578, 582 (11th Cir. 2007), the Eleventh Circuit interpreted *Madray* to hold that complaining to an individual "not designated [by the employer] to receive or process sexual harassment complaints" is insufficient to put the employer on actual notice of sexual harassment.

Applying those cases to Glanton's argument that the policy is ambiguous and the policy could reasonably be interpreted as allowing for a report to a supervisor, the Court concludes that Glanton's allegations are sufficient to plausibly state a basis for employer liability. There are portions of the policy which contemplate that harassment complaints and incidents will be "brought to the attention of any manager or supervisor." (Doc. 26-2 at 2). The policy then requires that those incidents and complaints be reported by the managers or supervisors to the Human Resources manager or representative, and even states that failure to so-report can be grounds for termination. (Doc. 26-2 at 2). These separate policy provisions can be considered under *Madray*, 208 F.3d at 1302. The policy

indicates, therefore, that managers and supervisors are persons designated by the employer to receive or process sexual harassment complaints. *See Minix*, 237 F. App'x at 582.

Additionally, while Wayne Farms does not concede Glanton's interpretation of the policy, Wayne Farms has conceded, at least for purposes of the motion to dismiss, that Glanton complied with the reporting policy when managers noticed an incident between Stephenson and Glanton, the managers took Glanton to Human Resources, and Glanton complained to the Human Resources representative. (Doc. 26 at 16) (stating that "the complaint to the Human Resources manager on June 29, 2018 counts."). It appears to the Court, therefore, that there are sufficient allegations of fact to plausibly state that Glanton reasonably took steps to follow Wayne Farms' policy by complaining to a supervisor because those complaints also were required to be taken to Human Resources under provisions within the policy. *See Madray*, 208 F.3d at 1297.

Wayne Farms also moves for dismissal on the ground that management took sufficient remedial action in response to Glanton's complaints. Much of that argument is premised on Wayne Farms' position, rejected by this Court as discussed above, that only conduct occurring after Glanton's direct complaint to the Human Resources manager provided notice to Wayne Farms. Wayne Farms also argues, however, that the responses taken by supervisors and managers before the final complaint were adequate remedial measures. What is appropriate remedial action will necessarily depend on the "particular facts of the case—the severity and persistence of the harassment and the effectiveness of any initial steps." *Williams v. Russell Corp*., 218 F. Supp. 2d 1283, 1294 (M.D. Ala. 2002).

In *Stancombe v. New Process Steel LP*, 652 F. App'x 729, 736 (11th Cir. 2016), the Eleventh Circuit held in an unpublished opinion that beginning an investigation, separating the employees during the investigation, and warning the harassing employee not to have further contact, even though those steps ultimately did not prevent a second incident from occurring, were reasonable and appropriate actions. The court cited to previous precedent with approval where an employer took appropriate action by investigating, transferring the complaining employee, and giving a verbal warning. *Id.* (citing *Fleming v. Boeing Co.*, 120 F.3d 242, 246-47 (11th Cir. 1997)). Wayne Farms also cites to *Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 904 (11th Cir. 1988), in which management engaged in prompt remedial action by threatening to fire the harassing co-worker.

Under the allegations of the amended complaint, a significant fact present in these cases is missing in this case; namely, that there is no allegation of warning or threat to Stephenson. Glanton affirmatively alleges that Stephenson was not reprimanded or warned. (Doc. 24 at ¶¶56, 80). And Glanton alleges that Stephenson's conduct continued after Glanton was separated each time. Glanton further alleges that the policy was not followed because no report was made to Human Resources. Accordingly, this Court cannot conclude that there are allegations of sufficient response of management. While it may be that upon further factual development Glanton will not be able to present sufficient evidence to support a finding of employer liability, at this point in the proceedings, this Court concludes that Glanton has stated a plausible theory of employer liability for a hostile work environment claim and that the motion to dismiss is due to be DENIED as to that claim.

*2. Constructive Discharge Claim*

Wayne Farms moves to dismiss Glanton's constructive discharge claim on the grounds that there is no viable underlying hostile work environment claim, there is no allegation of deliberate action by Wayne Farms, and the working conditions were not sufficiently severe. As noted above, the Court has concluded that Glanton has plausibly stated a hostile work environment claim, undermining that ground for dismissal, so the Court now turns to Wayne Farms' other two grounds for dismissal of the constructive discharge claim.

Wayne Farms states that there is no allegation of direct action by Wayne Farms and that in fact Wayne Farms was not given time to act. A constructive discharge will generally not be found if the employer is not given sufficient time to remedy the situation. *See Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir. 1996). "An employer may defend against [a constructive discharge claim] by showing both (1) that it had installed a readily accessible and effective policy for reporting and resolving complaints of [discrimination], and (2) that the plaintiff unreasonably failed to avail herself of that employer-provided preventive or remedial apparatus." *Pennsylvania State Police v. Suders,* 542 U.S. 129, 134 (2004). For the reasons discussed above in connection with the hostile environment claim, all of Glanton's complaints, not just the final one, are relevant, which render unavailing Wayne Farms' reliance on the amount of time which elapsed after Glanton's last complaint. The amended complaint plausibly alleges that there was an ineffective policy and/or that Glanton reasonably availed himself of the reporting policy.

In support of the ground for dismissal that the allegations of conduct are not sufficiently severe, Wayne Farms again argues that Wayne Farms was only aware of the conduct on the day that Glanton quit and that a reasonable person would not have felt compelled to resign after that final complaint. Again, it may be that after factual development in this case, Glanton ultimately will be unable to demonstrate sufficient severity, but at this point in the proceedings, the Court finds that the allegations of physical contact and management's response regarding that conduct after each of Glanton's complaints over a period of time are sufficient to withstand Wayne Farms' motion.

*3. State-Law Claims*

Wayne Farms moves for dismissal of counts three, four, and five, which are vicarious liability claims for outrageous conduct, invasion of privacy, and assault and battery on the same basis; namely, that the alleged conduct by Stephenson fell outside of his employment. As to the negligent supervision claim in count six, Wayne Farms argues that a single incident of past conduct is insufficient to establish negligent supervision and that an employer cannot be held liable for negligent supervision when it acts promptly to correct harassment.

To establish that the employer "ratified" the tortious conduct of one employee against another employee under Alabama law, the complaining employee must show four things: (1) the underlying tortious conduct of the offending employee; (2) the employer's knowledge of the offending employee's tortious conduct against the complaining employee; (3) the employer's knowledge that the conduct constituted sexual harassment or a continuing tort, or both; and (4) the employer's failure to "take 'adequate' steps to remedy

the situation." *Stancombe*, 652 F. App'x at 740 (citing *Potts v. BE & K Const. Co.*, 604 So.2d 398, 400 (Ala. 1992)). Negligent supervision similarly requires inadequate investigation and action. *See Machen v. Childersburg Bancorporation, Inc.*, 761 So. 2d 981, 987 (Ala. 1999) (examining whether an employer took adequate steps to investigate a complaint of sexual harassment and took appropriate disciplinary measures to remedy the situation in evaluating a negligent supervision claim).

For reasons discussed above in connection with other claims, allegations regarding Wayne Farms' policy, and its managers' actions pursuant to that, undermine Wayne Farms' grounds for dismissal. The motion to dismiss is due to be DENIED as to all of the state-law claims.

## III.   CONCLUSION

For the reasons discussed, it is ORDERED as follows:

1. The Motion to Dismiss (doc. 10) is DENIED as moot.

2.  The Motion to Dismiss (doc. 25) is DENIED.

Done this 24th day of January, 2020.


 /s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE